UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLYDE BROCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-01734-SEB-CSW |
| | ) |
| CENTURION HEALTH OF INDIANA, LLC., | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DISMISSING ACTION, AND DIRECTING ENTRY OF FINAL JUDGMENT**

Clyde Brock alleges that he was deprived of medications in 2022 while incarcerated at Pendleton Correctional Facility. The defendant, Centurion Health of Indiana, LLC, seeks summary judgment on the affirmative defense that Mr. Brock failed to exhaust administrative remedies before filing suit. Resolving material factual disputes in Mr. Brock's favor, the record shows that administrative remedies were available and Mr. Brock failed to exhaust them. Accordingly, the Court grants Centurion's motion, dismisses the action, and enters final judgment.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is required to consider only the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
## Prison Litigation Reform Act and Exhaustion of Administrative Remedies

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Brock] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

## III.
## Facts

The Indiana Department of Correction (IDOC) maintains an Offender Grievance Process, which is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 31-1 at 4. Inmates can use the grievance process to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at 6.

To exhaust the grievance process's remedies, an inmate must complete four steps. First, the inmate must attempt to resolve his concern informally. *Id.* at 6 (formal grievance must follow "unsuccessful attempts at informal resolutions"). Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist. *Id.* at 12–15. Third, if the inmate is dissatisfied with the grievance specialist's response, he must submit an appeal to the grievance specialist, who will transmit the appeal to the warden or the warden's designee. *Id.* at 15–16. Fourth, if the inmate is dissatisfied with the warden's response, he must submit a second appeal to the IDOC's grievance manager. *Id.* at 16–17.

The grievance policy imposes obligations and deadlines on inmates and administrators. After attempting unsuccessfully to resolve his concern informally, an inmate must submit a formal grievance to the grievance specialist within ten business days of the incident giving rise to the grievance. *Id.* at 12. The grievance specialist must screen the grievance for compliance with minimum standards. *Id.* at 12–13. Within ten business days, the grievance specialist must either (a) accept the grievance, log it, and issue a receipt to the inmate, or (b) reject it and return it to the inmate with an explanation. *Id.* at 12. Rejection is appropriate if the grievance does not meet the minimum standards, is submitted after the ten-business-day deadline, or grieves "a matter inappropriate to the offender grievance process." *Id.* at 12–13. When a grievance is rejected, the inmate may correct and return the grievance within five business days. *Id.* at 13.

If an inmate submits a formal grievance and does not receive either a rejection notice or a receipt within ten business days, he must notify the grievance specialist and retain a copy of the notice. *Id.* at 12. The grievance specialist must respond within ten business days. *Id.*

If a grievance is designated an "emergency" grievance, the grievance specialist must bring the grievance to the warden's attention within one business day "of recording the emergency

4

grievance." *Id.* at 8. The grievance policy does not set out different processes for screening, rejecting, or logging emergency grievances.

Mr. Brock submitted a formal grievance labeled "EMERGANCY" on August 7, 2022, stating:

> I have not been recieving my heart medication as it is prescribed. This is causing my health to jump up and down. I ask the nurse when P.M. medication is delivered on the unit. However I am never given a direct answer. I try to solve this via talking to the nurse and by way of health care request. On 8-6-2022 my medications was not given as the nurse did not have them but no reason was given why nor was I told that she will check into it to see what the issue is.

Dkt. 31-1 at 19 (errors in original). The parties dispute what happened next.

According to Centurion, Grievance Specialist Christina Conyers rejected Mr. Brock's formal grievance on August 12, 2022. *Id.* at 20. She explained:

> You lead me to believe that this is a on-going issue of you not receiving your medications as well as who you have spoke to (nurse or any staff) about not getting your medication. In order to properly look into this issue, we are going to need the name of the nurse who you spoke with on the 8/6/22 when you asked why you didn't receive your medication and when did you follow up with medical for not receiving your medication? If you can't give me the name of the nurse, you may return this grievance with a time frame of when the nurse was passing out medication and I can look on video. Remember video can only be saved within 30 days and in 4 hour time frames.

*Id.* (errors in original). Mr. Brock did not revise and resubmit this grievance or otherwise respond to Ms. Conyers' rejection notice.

In fact, Mr. Brock maintains that he never received Ms. Conyers' rejection notice. Dkt. 36-1 at 3. Mr. Brock has designated three request-for-interview forms, addressed to Ms. Conyers, stating that he never received a response to his formal grievance. These documents are dated September 5, 2022; August 31, 2023; and September 14, 2023. Dkt. 37 at 4–5. He also has designated a first-level grievance appeal dated August 24, 2023. *Id.* at 3. Mr. Brock filed this lawsuit on September 1, 2022.

5

## IV.
## Analysis

Resolving material factual disputes in Mr. Brock's favor, he failed to utilize all the administrative remedies that were available to him, and Centurion is entitled to summary judgment.

Mr. Brock attests that he never received a response, rejection, or receipt for his formal grievance. If this is true, the grievance policy required him to notify the grievance specialist and maintain a copy of the notice. Mr. Brock has designated documents that could be construed as such a notice, but they are all dated after he filed this lawsuit.

Mr. Brock states in a declaration that he submitted his grievance appeal on August 24, 2022—not August 24, 2023, as the appeal document indicates. *Compare* dkt. 36-1 at 2 *to* dkt. 37 at 3. If this is true, it would not save this lawsuit. Mr. Brock could not submit a proper grievance appeal under the policy until after he received a response to his formal grievance or until 20 business days after the grievance specialist acknowledged receipt of his formal grievance. But Mr. Brock never received a response or a receipt to his grievance. Perhaps Mr. Brock's formal appeal could function as his notice that he never received a grievance response or receipt. But then the grievance policy would have given the grievance specialist ten business days to respond, *see* dkt. 31-1 at 12, and Mr. Brock filed his lawsuit sooner than 10 business days after August 24, 2022.

If Mr. Brock received no response, rejection, or receipt for his formal grievance, the grievance policy required him to notify the grievance specialist and wait at least ten business days before filing suit. By his own account, Mr. Brock did not comply with this requirement. Centurion therefore is entitled to summary judgment.

## V.
## Conclusion

Centurion's motion for summary judgment, dkt. [30], is **granted**. This action is **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*all* dismissals under § 1997e(a) should be without prejudice."). The **clerk is directed** to enter **final judgment**.

   **IT IS SO ORDERED.**

Date: 1/23/2024

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CLYDE BROCK
286310
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Laura K. Binford
RILEY BENNETT EGLOFF LLP
lbinford@rbelaw.com

Alexis Jenkins
Riley Bennett Egloff, LLP
ajenkins@rbelaw.com